## TILLERY v. BOND.

### (Circuit Court, S. D. Mississippi, E. D. May 23, 1889.)

CARRIERS OF PASSENGERS—FAILURE TO ANNOUNCE STATION—EVIDENCE.

In an action for damages for being carried past her station, plaintiff testified that she did not know the station, that she was sick, and that she so informed the conductor, who promised to let her know when the station was reached; that he did not do so; and that she did not hear the station called. Her attorney testified that he was on the same train, and got off at the station in question, and that he did not hear the station called, but he admitted that he was familiar with its locality, and did not listen particularly to hear it called. The porter whose duty it was to call the station testified that he did so on the occasion in question, and that he was sure, because his attention was called to the matter the next day. The conductor denied that plaintiff had any such conversation with him as stated. It appeared that plaintiff was a morphine eater, and subject to fits of unconsciousness. *Held,* that the evidence did not warrant a recovery.

Petition against Receiver on a Claim for Damages.

*Shelton & Crutcher,* for petitioner.

*Birchett & Gilland,* for respondent.

HILL, J. This is an action brought by the plaintiff against the defendant, as receiver of the Vicksburg & Meridian Railroad Company; the questions of fact, as well as of law, being submitted to the court upon the pleadings and proof. The declaration, in substance, charges that plaintiff purchased a ticket from the agent at Vicksburg to Bovina, and entered the passenger train for the latter place; that on the way she informed the conductor of the train that she was sick, and that she did not know the stations on the road, being a stranger in the country, and requested him to have her notified when the train reached Bovina, which he promised to do, but which he failed to do, and that she did not know when they reached that station, and was carried to the next station, five miles distant; that when she left the train she reminded the conductor of his promise to notify her when they arrived at Bovina, which he acknowledged, and said he had forgotten it, and told her she could return by the evening train; that, when she informed him that she had no money with which to pay her fare, the conductor then told her that she would have to walk back, which she did; that she had to cross a long bridge on a trestle, and she did so with great difficulty, having to crawl part of the way on her hands and knees; that the weather was very hot, which

brought on sickness and suffering, and which disabled her from making a living,—all of which was the result of the carelessness and gross negligence of the conductor and employés of the defendant. To the declaration the defendant has interposed the plea of the general issue, which devolves upon the plaintiff the burden of establishing by proof the charges made in her declaration. The plaintiff testifies to the facts alleged, and other facts, which, if sustained by the other proof in the cause, would entitle her to a recovery for the actual damages sustained by her, if not to exemplary damages. But she is contradicted in several important particulars by witnesses on the part of the defendant, who are not, and were not at the time, in the employment of the defendant, and in no way interested in the result of the suit, which, aside from the interest the plaintiff has in the verdict, greatly impairs the weight to be given to her testimony. The conductor, in his testimony, denies that he saw her at the next station, or knew that she did not get off the train at Bovina, until he returned on the next day, and has no recollection of her making any request to be notified. The agent at Bovina, in his testimony, states that the plaintiff, when she returned to that place in the evening, admitted that she did not see the conductor at the next (Smith's) station, and did not speak to the agent at that place on the subject, and thought all she could do was to walk back, and did so. The colored porter, whose duty it was just before reaching Bovina to call out the name of the station, testifies that he did so; that he remembers that he did so from the fact that he was informed on the next evening, on the return trip, that the plaintiff had been taken past that station. He further testified it was his duty to call out the name of the said station, which he never neglected. To rebut this evidence on the part of the defendant, or rather as part of the testimony in chief, the plaintiff has produced the testimony of J. A. Bullock, who testifies that he was a passenger on the train on the morning that plaintiff left Vicksburg, and in the same car, but did not remember hearing the station called out, and thinks if it had been he would have known it; but, on cross-examination, states that he was not in the habit of listening for the calling of the station, as he knew it, and it was his place of stopping, and admits that the station might have been called out, and he might not have noticed it. This witness admits that he is one of the attorneys in this case, and consequently has more or less interest in the result of the suit, and therefore, on the score of bias, is subject to the same scrutiny as other interested witnesses; but, aside from this, it is a well-known fact, from daily experience, that persons who do not intend getting off at a station, or one who knows the station, and is in the habit of getting off there, are not apt to notice the calling of it, or to remember it afterwards, which fact greatly lessens the weight to be given to his testimony, without in any way impairing his veracity. It is insisted for the plaintiff that, as she intended to get off at Bovina, she would be listening for the announcement of the name of the station, and would have known whether it was announced or not. And there is force in this position, which would greatly strengthen the weight to be given to her testimony, but

for the testimony of the persons at whose house she was for some time prior to the time these events occurred, and from which place she had directly come, and that is that she had had severe spasms or epileptic fits, and had been subject to them for years; that she used considerable quantities of opium and morphine, and spent a great deal of her time sleeping or in a stupor. The proof further shows that after this time she used considerable quantities of morphine. So I am satisfied that she was and is what is called a "morphine eater," who involuntarily loses consciousness when the attention is not specially engaged, and often while in conversation with others. This is common experience or observation.

I have carefully considered the evidence on both sides, and am satisfied that as the burden of proof is upon the plaintiff, and that, as her own testimony is so much weakened by the contradiction of her statements by credible and disinterested witnesses upon important points, her interest in the result of the suit, and what is evidently her mental condition, produced by her bodily sufferings and the use of opium and morphine, it is not sufficient to maintain her action, when disproved by the testimony of the porter, whose special business it was to make this announcement, and whose attention was called to the circumstance the next day; and that the testimony of Bullock, giving to it all the weight to which it is entitled, is not sufficient to overcome the testimony of the defendant, and give such a preponderance of weight to her evidence as to entitle the plaintiff to a recovery. The condition of the plaintiff is certainly a deplorable one; broken down by disease, abandoned by husband and children, and thrown on the cold charity of the world. She is certainly a proper subject to be taken care of by the public, or some of our charitable institutions. But, neither the defendant nor the interests represented by him being under special obligations to take care of and provide for such unfortunate people, he cannot be required to do so. The result is that the finding of the facts, as the verdict of a jury, must be in favor of the defendant, and a judgment rendered in his favor, but without costs, except his own costs, which will be paid out of the funds in court.